## ACKER *vs.* BENDER.

[DETINUE FOR SLAVES BY MORTGAGEE AGAINST MORTGAGOR.]

1. *Title to personalty may pass by parol.*—The title to personal property, although acquired by an instrument under seal, may pass by a parol contract.
2. *Release of mortgage by subsequent parol contract.*—A mortgage of personal property, so far as it conveys the title to the property to the mortgagee, may be released or discharged by a subsequent verbal contract: either an agreement by the mortgagor to do certain things, or the performance of those things by him, may be made the ground of settlement or discharge.
3. *Waiver of performance of condition.*—A party may always waive and dispense with the performance of a condition in his favor.
4. *Construction of contract.*—In the construction of verbal contracts, the conduct and acts of the parties in carrying out their engagements may be regarded, in order to see what interpretation they have themselves adopted, and what conditions have been waived or performed.

APPEAL from the Circuit Court of Dallas.
Tried before the Hon. E. W. PETTUS.

THIS action was brought by Griffin M. Bender, against
Mrs. Sarah E. Acker, and was commenced on the 5th
January, 1857. The defended pleaded *non detinet* "in
short by consent, with leave to give in evidence any matter
that is a bar to the action." The slaves in controversy
were claimed by the plaintiff under a mortgage executed
to him by Mrs. Acker and her husband, dated the 1st
August, 1854, which was given to secure the payment of
two notes, for over $3,000 each, executed by Mrs. Acker
and her husband to said Bender, for the indebtedness of
the husband, and also to indemnify Bender against loss
on several notes which he had signed as surety for Acker;
which mortgage contained a power of sale, on default
being made in the payment of any of the secured notes,
the first of which fell due on the 1st January, 1855. Mrs.
Acker claimed the slaves as belonging to her under a
marriage settlement, dated the 24th October, 1839, which
secured her property to her separate use ; and also under
a contract with the plaintiff, executed subsequently to the
mortgage, by which he released his interest in the slaves.

In relation to this contract, Dan'l Chandler, whose depo-
sition was taken by the defendant, testified as follows :
"I drew the mortgage from Acker and wife to Bender.
After Acker's death, Mrs. Acker called on me, and stated,
that her property had been settled and secured to her by
a marriage settlement, and that she was advised the mort-
gage would not bind it. I told her, that I did not know
how that was ; but stated, that if that was the case, it was
unfortunate that she had joined in the mortgage. Bender
afterwards called on me to consult me in relation to the
matter. I told him, that Mrs. Acker had spoken to me,
and suggested that he should employ some other attorney.
He did not think it necessary, but supposed the matter
could be arranged ; he did not wish to injure Mrs. Acker
and her children, but was willing to make any arrange-
ment without going to law if his debt could be secured.
The marriage settlement was then produced by Mrs.

Acker, and, for the first time, I read it audibly in the hearing of the parties. I then stated to Mr. Bender, that Mrs. Acker informed me that she had got advice as to her rights under the deed, and was determined to assert them; that if he attempted to enforce the mortgage, there would necessarily be litigation; and that I hoped the matter could be settled without his sustaining any loss, and without Mrs. Acker's losing her negroes. Much was said between the parties, and the kindest feelings were expressed. After various suggestions and propositions, it was finally agreed, that Mrs. Acker should convey to Bender certain lands claimed and owned by her, and some personal property, consisting of mules, wagons, potatoes, wood, wood-boat, &c., and that Bender should release from his mortgage the negroes which belonged to Mrs. Acker. It was agreed, that she might take the negroes on her return to Dallas, and that she should send me the certificates for the land; and a deed was to be drawn, conveying the land to Mr. Bender, and he was to take the personal property. With this arrangement both parties seemed to be satisfied."

There was other evidence in the case, touching the question of performance of this agreement and other matters, and several exceptions were reserved to the rulings of the court below on this evidence; but the view taken of the case by the appellate court renders these matters immaterial.

The court charged the jury, among other things,—

"1. That unless the agreement made between plaintiff and defendant, as shown by the evidence of Daniel Chandler, was an executed agreement, it would be no defense to this action.

"2. That the agreement between plaintiff and defendant, as shown by the evidence of Daniel Chandler, was not such an executed agreement, as would release the slaves sued for from the mortgage."

The defendant excepted to each of these charges, and then requested the court to instruct the jury as follows:

"1. That if they believed from the evidence that Mrs. Acker delivered the possession of the potatoes, wood and

mules to Bender, according to the agreement, and tendered him a deed for the lands which she promised to convey; and that Bender refused to receive the same, but delivered the negroes sued for under said agreement,— then it was not necessary that he should have released the negroes sued for from the mortgage, in order to entitle the defendant to a verdict in this action.

"2. That if the plaintiff delivered the negroes sued for, in pursuance of the agreement shown by the evidence, then he was not entitled to recover in this action."

The court refused both of these charges, and further instructed the jury, "that a subsequent partial performance of the parol agreement shown by the evidence would be no bar to the plaintiff's recovery in this action—that said agreement, in order to make it a bar, must be shown to have been fully executed by the parties."

The defendant excepted to the charges given by the court, as well as to the refusal of the charges asked; and she now assigns them as error, together with the rulings of the court on the evidence.

BYRD & MORGAN, for the appellant.

ALEX. WHITE, and N. R. H. DAWSON, contra.

RICE, C. J.—Upon a careful examination of this case, as now presented, we think it unnecessary to express our opinion upon many of the questions raised. It is evident that the case was tried and decided in the court below without a due regard to certain well settled principles, some of which we now proceed to state.

The title to *personal property* may pass by parol. The right or capacity thus to pass it is not destroyed or diminished by the mere fact, that it was acquired by an instrument under seal. A mortgage, although under seal, is a security for the payment of a debt. So far as it conveys to the mortgagee title to personal property, he may release or discharge it, by a sufficient parol agreement— by a subsequent valid verbal contract.—Wallis v. Long, 16 Ala. 738; Deschazo v. Lewis, 5 Stewart & Porter, 91; Addison on Contracts, (edition of 1857,) 1099.

16

It is competent for the parties to a mortgage, or to any contract, to waive their rights under it, in whole or in part, by substituting another and different contract in lieu of it.—Addison on Contracts, (ed. of 1857,) 1100; Lyth v. Ault, 7 Exchequer R. 669; Young v. Fuller, 29 Ala. 464; Thomason v. Dill, 30 Ala. 444.

The right of a mortgagee to personal property may be agreed to be settled or discharged in one of two ways: "either *an agreement to do* certain things may itself be the ground of settlement or discharge, or *the doing* of these things may be the ground of settlement or discharge." If the agreement itself is the ground of settlement or discharge, *the doing* of the things agreed to be done is not essential to the validity or efficacy of the settlement or discharge.—Addison on Con. 1100; Flockton v. Hall, 14 Ad. & Ellis (N. S.) 380; Babcock v. Hawkins, 23 Ver. 561; Cartwright v. Cooke, 3 Barn. & Ad. 701; Bradley v. Gregory, 2 Camp. 383; Evans v. Powis, 1 Exchequer R. 601; Very v. Levy, 13 How. Rep. 345.

A man may always waive a condition in his own favor, and dispense with its performance. Every verbal contract is to be interpreted in connection with the surrounding circumstances; and the conduct and acts of the parties, in carrying out the engagement they have entered into, may be regarded in order to see what interpretation they have themselves put upon it, and what conditions have been waived or performed.—Addison on Con. 877–880; Morgan v. Smith, Wykoff and Nicholl, 29 Ala. 283.

The charges of the court, upon the effect of the agreement made by plaintiff and defendant, as shown by the evidence of Daniel Chandler, cannot be reconciled with the principles above announced, and are erroneous. For the error of those charges, we reverse the judgment, and remand the cause, without committing ourselves upon the other questions raised in the record.