139 So. 342

### BAY MINETTE LAND CO. v. STAPLETON et al.

I Div. 685.

Supreme Court of Alabama.

Jan. 21, 1932.

Hamilton & Jones, of Evergreen, for appellees.

Harry T. Smith & Caffey, of Mobile, for appellant.

**THOMAS, J.**

The bill was by a mortgagor to prevent foreclosure, and sought injunction and accounting.

The review was of the final decree sustaining the report of the special master. It has the effect of a verdict of a jury. Bidwell v. Johnson, 195 Ala. 547, 70 So. 685; Ex parte Jackson, 212 Ala. 496, 499, 103 So. 558; Bailes v. Bailes, 216 Ala. 569, 114 So. 185; Adalex Const. Co. v. Atkins, 214 Ala. 53, 106 So. 338.

The appeal is to correct the disallowance of two credits claimed by appellant on the mortgage sought to be foreclosed by sale under its powers. The two findings under the application of the law as understood by the special master were the disallowance of $3,000 claimed by appellant on the contract or sale of properties to one of the mortgagees, as to certain of the lands mortgaged, and other lands, and the allowance of the sum of $550 as reasonable attorneys' fees incurred in the ascertainment of the mortgage debt. The circuit court declined to consider the exception as to the disallowance of the $3,000 credit, on the theory that the testimony relied upon was not sufficiently noted under Chancery Rule 93.

It will be observed that rule 93 merely authorized the trial judge to ignore *such testimony* that was not sufficiently noted—that the "Chancellor need not examine testimony not thus noted." It is held that under the rule it is within the discretion of the chancellor to consider evidence not noted on exceptions to the register's report. Faulk & Co. v. Hobbie Groc. Co., 178 Ala. 254, 59 So. 450. The right to ignore any testimony not sufficiently noted, and the duty to consider that so noted, and the legal principles involved in an exception to a master's report, are not to be confused.

There are cases where exceptions are supported, because of error in the law laid down and applied by the special master to the facts (as distinguished from exceptions to conclusions or findings of fact) to which the rule does not apply. McCollum v. McCollum, 218 Ala. 500, 119 So. 232; Ex parte Cairns, 209 Ala. 358, 96 So. 246; Lunsford v. Shannon, 221 Ala. 207, 128 So. 215; Id., 208 Ala. 409, 94 So. 571; Id., 215 Ala. 465, 111 So. 22. This exception as to the application of the law to the undisputed facts falls within these cases. The contract of one of the mortgagees with the mortgagor as to a part of the mortgaged lands and other real property rights in adjacent or contiguous lands was not denied, and in fact admitted in answer (and as for that shown by evidence sufficiently indicated), and it appears from the record that the deed was tendered in open court by the mortgagor in the presence of the special master, and there was no dispute about the fact of possession or the exercise of the rights of possession by one of the mortgagees. The question of law was presented as to the disallowance of the claim of $3,000, the purchase price of these lands, and rights by that mortgagee and his right and interest in the mortgage that can be covered by a decree in equity.

As to the $3,000 item, the mortgage in question was executed to Stapleton and Moorer; its purpose was to secure the repayment of moneys advanced, and mortgagees were jointly and equally interested therein. It is shown by the testimony of Moorer and Stapleton that they were equally interested in that subject-matter and the consideration of the mortgage. Thus was it the mortgagor's duty to account to the mortgagees and each of them for his interest in the debt so secured, and the right to have the respective credits, or set-off in equity, on the mortgage as against the complainant's indebtedness, and as to each of the mortgagees.

The cases on mutuality cited by appellee were at law (First Nat. Bank v. Capps, 208 Ala. 207, 94 So. 109; Drennen v. Gilmore Brothers, 132 Ala. 246, 31 So. 90, 90 Am. St. Rep. 902; Cannon v. Lindsey, 85 Ala. 198, 3 So. 676, 7 Am. St. Rep. 38); in a court of equity its decree could have been so molded as to protect Moorer, the comortgagee, and not injure him by the allowance of set-off as against his comortgagee under the special equities and new consideration of the mortgagor. Brown v. Scott, 87 Ala. 457, 6 So. 384.

This is the status shown by the pleadings and evidence. It is further shown that after execution of the mortgage to Stapleton and Moorer, Stapleton entered into a written contract with the mortgagor-appellant to purchase certain of the mortgaged property and other property not embraced therein, consisting of mortgagor's title and interest in a spur and side track on a branch line of the Louisville & Nashville Railroad Company on the opposite side of the addition to the town of Bay Minette. This contract of date of June 19, 1929, was

between "Bay Minette Land Company as seller" and "W. D. Stapleton as purchaser." It is shown that such "purchaser" entered into the possession, and authorized the acts of ownership by his agent over those lands covered by the contract; that he has not paid the purchase price therefor, or credited on this mortgage debt the purchase price thereof; that he thereafter transferred and assigned a portion of *the property covered by that contract (and that not embraced in the mortgage in question)* to the Louisville & Nashville Railroad Company, and placed it beyond his control or return to plaintiff.

The contract made with the railroad company of date of January 20, 1930, contained many special provisions dealing with the construction of tracks under contracts made by the railroad company dated January 10, 1913, and May 3, 1923, and concludes as follows:

"(22) Whenever, and as often as, the payment of any sums of money due by second party to first party, under any of the provisions of this contract, shall become due, a lien to secure said sums shall forthwith become fixed upon said track material, which lien shall become extinguished only by the payment of the sum or sums due.

"(23) It is expressly understood and agreed that this contract is personal to the second party, and can be assigned only with the written consent of the first party; and that as a condition precedent to such consent, first party will require the assignee to assume any indebtedness due from second party, arising under any of the provisions of this contract."

Unless complainant is so allowed the set-off, in a court of equity, against his debt to Stapleton on the mortgage, the statu quo as to certain of the mortgaged lands, and that granted to the Louisville & Nashville Railroad Company cannot be returned to complainant. It is but just and equitable that there should be an accounting in this suit for its purchase price as sought in the bill. This is necessary to effect a clear equity or to avoid irremediable injustice as to these properties and between the parties indicated. 47 Am. St. Rep. page 590, note; 34 Cyc. 633; Cosgrove v. Cosby, 86 Ind. 511.

The agreement between Bay Minette Land Company and W. D. Stapleton of date of June 19, 1929, contained among others the provision, "That in consideration of the sum of One Dollar to it in hand paid by purchaser, receipt whereof is hereby acknowledged and of the mutual covenants, herein contained, seller agrees to convey to purchaser, by full warranty deed, the real property hereinafter described, and to transfer and assign to the purchaser the other rights herein described, at and for the total purchase price of Three Thousand Dollars ($3,000.00), same to be paid in cash upon delivery of deed conveying fee simple title to the said real estate, free of all encumbrances, and the delivery of proper transfer and assignment for the other rights, the property covered hereby and to be conveyed and transferred hereunder," describing the property, and further providing: "Also all and the entire right, title and interest of the seller in and to the oil track spur and that portion of the side track along the B. M. & Ft. M. Branch of the L. & N. Railroad Company lying opposite, the Ft. Morgan Addition to the Town of Bay Minette, lands of Peoples Fertilizer Company, and the land adjoining Peoples Fertilizer Company on the North, in so far as such tracks are North of the South line of the real estate hereinabove described, together with all rights and monies to become due under rental agreement with the Pan-American Petroleum Corporation after the date hereof. Upon transfer of such track rights hereunder, purchaser may make a new trackage agreement with the L. & N. Railroad Company in the purchaser's name with respect to the portion of the tracks covered hereby, purchaser being entitled to all benefits seller may have under original contracts in so far as same relate to portions of track covered hereby, including refund of any monies." The agreement concludes as follows: "The purchaser agrees to purchase the above properties under the terms and conditions hereof, same to be consummated upon presentation of proper conveyances and transfers by seller which shall be done within thirty (30) days from this date."

The appellant, in the presence of the special master, tendered to such "purchaser" the deed called for in the contract; that tender was refused upon *the ground that complainant had failed to comply with or live up to the terms of the agreement or contract.*

Upon this item of credit by way of set-off against Stapleton's part of the debt, the special master reported:

"I have gone into the matter of the claim of credit of $3,000.00 as of June 19th, 1929, by Bay Minette Land Company against its mortgage made Messrs. Stapleton and Moorer with considerable care. It is claimed by the complainant that a credit for $3,000.00 should be entered as of June 19th, 1929, in that the Bay Minette Land Company contracted to sell to W. D. Stapleton a tract of land covered in the mortgage from Bay Minette Land Company to Stapleton and Moorer for the sum of $3,000.00. It is to be noted, however, that the contract of purchase provided that this amount of $3,000.00 was 'to be paid in cash upon delivery of deed conveying fee simple title to the said real estate free of all encumbrances and the delivery of proper transfer and assignment for

the other rights, etc.' It was also provided in the contract, 'The purchaser agrees to purchase the above properties under the terms and conditions hereof, same to be consummated upon presentation of proper conveyances and transfers by seller which shall be done within thirty days from this date.'

"The contract of purchase entered into by Bay Minette Land Company and W. D. Stapleton bears date June 19th, 1929. W. D. Stapleton was to receive the property described therein free of all encumbrances within thirty days from June 19th, 1929. The mortgage given W. D. Stapleton and Henry D. Moorer is dated December 8th, 1928, and matured six months after date. It would therefore appear the contract for the sale of the property by Bay Minette Land Company was made on the assumption the mortgage would be paid before a deed was given W. D. Stapleton by the Land Company.

"The mortgage has never been paid and Bay Minette Land Company is in no better position now to carry out its agreement with W. D. Stapleton than it was thirty days after the date of the agreement of sale and purchase. Therefore, I find that Bay Minette Land Company may not at this time insist on W. D. Stapleton carrying out the agreement to purchase. No deed was ever tendered W. D. Stapleton until November 6th, 1930—the day set for the hearing before the Special Master. That tender was refused, Mr. Stapleton or his counsel saying, in effect, that the complainant had failed to live up to the terms of its agreement.

"I find that Bay Minette Land Company has not so complied with its contract with W. D. Stapleton as to be entitled to any credit on account thereof upon the indebtedness secured by its said mortgage and that the entire property included in the mortgage is bound for the whole debt secured by the mortgage. Ehrman v. Alabama Mineral Land Company, 109 Ala. 478, 20 So. 112."

The foregoing indicates that the special master refused the set-off or credit as against Stapleton's part of the mortgage debt, not on account of the want of proof, but by reason of an erroneous conclusion of law based upon: (a) The failure of the seller to deliver the deed in "thirty days" from date of the contract (June 19, 1929), which authorized the buyer to keep the property and not pay for it, to take possession, exercise and enjoy its ownership, sell a portion to the Louisville & Nashville Railroad Company, deal with the rents, and authorize improvements or superstructures to be placed thereon. (b) Since the contract called for conveyance of unincumbered title by reason of the mortgage in question, the seller was not in a position to comply, and was no reason that a purchaser may take and keep possession

without payment of the purchase price for the property. Yet that purchaser took possession of the property, or of the several and separate parts thereof, sold and disposed of a valuable right and portions thereof, improved other portions, dealt with the rentals, retained the property, and asserted, in a court of equity in a suit for accounting, redemption and foreclosure, that there was no obligation to pay the purchase price, because of stated defect in the title, against which the conveyance (contracted for) sought to be delivered contained a covenant. This is not the law of the case. The conveyance tendered and in evidence contained the following covenant (against the defect in title in question): "To have and to hold to the said Grantee, his heirs and assigns forever. And the Bay Minette Land Company does covenant with the said Grantee, that it is seized in fee simple of the above described premises; that it has the right to sell and convey the same; that the said premises are free from all incumbrances, and that it will forever warrant and defend the title to the premises hereby granted to the said Grantee, his heirs and assigns, against the lawful claims of all persons."

The foregoing statement should maintain the incorrectness of these legal conclusions of the special master, which should have been considered and decided adversely by the trial court from the evidence on the exception to the master's report, which is sufficiently and fully noted. These facts are shown by the contract of the Bay Minette Land Company to the purchaser, and the conveyance tendered in court and before the special master from the Bay Minette Land Company to purchaser; its refusal on the grounds indicated, and the other evidence upon the subject, were matters of easy access and indicated in the record before us.

The application of the $3,000 purchase price, as against Stapleton's half interest in the debt and mortgage, would leave a balance due, at least, to Moorer.

The purpose of this bill was to ascertain the balance and to whom due, that same may be paid to clear the title of the property conveyed to said purchaser-mortgagee, a portion of which he had conveyed to another. That is, the special equity of the bill was for accounting and redemption, the clearing of the incumbrance, and giving to such purchaser, his vendee or grantee, a title cleared of the incumbrance as required by the contract of date of June 19, 1929. That is, equitable relief was refused by the special master on the erroneous assumption and application of law that the sale could only be consummated under the contract by delivery of conveyance and cleared title within thirty days.

■ Time of delivery of the property and the conveyance was not treated by the parties as

the essence of the contract; the grantee-purchaser therein did not insist upon delivery of the conveyance per contract within the time and that the failure thereof destroyed the seller's rights. This construction of the contract cannot be refuted since the purchaser took possession and conveyed part of the property to the railroad corporation, allowed another to erect a turpentine still on other of the lots, and failed to pay the purchase price; that is, so dealt with the property, or a substantial part thereof, as that its statu quo cannot be restored, and having so acted is estopped in this court (Ivy v. Hood, 202 Ala. 121, 79 So. 587) to refuse the proffered conveyance and deny the set-off on his part of the mortgage debt.

A purchaser who thus waives provisions of a contract inserted for his sole benefit, and by the substantial change destroys or disposes of a substantial part of the property, and after the time limit, enters into the possession and deals with the property as his own, may not thus retain the property and resist payment of the purchase price, on account of defect in title, in a suit having for its object the clearing of that title; the purchaser being aware of such defect when he so acted as to that subject-matter, treating it as its owner in possession. He may not for such reason thereafter rescind the conveyance. Burkett v. Munford, 70 Ala. 428; Strong et ux. v. Waddell, 56 Ala. 471; Holmes v. Richards, 67 Ala. 577; Barnett v. Gaines & Townsend, 8 Ala. 373; Beck v. Simmons & Kornegay, 7 Ala. 71.

It is established in this jurisdiction that a purchaser, who accepts possession with knowledge of an existing defect in title or an incumbrance, has no right of rescission, and only in a proper case has a recoupment. Varnon v. Nabors, 189 Ala. 464, 66 So. 593. See authorities collected in 34 A. L. R. 1325 note, and 1326 note.

It is a principle of universal recognition, "that if a party 'desires to abandon or rescind a contract, by reason of the breach of it by the opposite party, or his inability to comply, [he] must act promptly and decidedly, upon the first discovery of the cause of rescission.'" Coleman v. First Nat. Bank, 115 Ala. 307, 22 So. 84, 85. The mortgagee in question did not so act as to the property, having full knowledge of the defect or failure in the premises. Corley v. Vizard, 203 Ala. 564, 84 So. 299.

It is further established that the execution of such contract vested the purchaser with the equitable title (Love v. Butler, 129 Ala. 531, 30 So. 735; Veitch v. Woodward Iron Co., 200 Ala. 358, 76 So. 124; Graham v. Graham, 205 Ala. 644, 89 So. 25; South v. Pinion, 207 Ala. 122, 92 So. 420), and

thereafter the seller held the legal title in trust for the buyer, and the latter held in trust, the purchase money for the seller. Rankin v. Dean, 157 Ala. 490, 492, 47 So. 1015; Harrison v. Sollie, 206 Ala. 284, 89 So. 562; Robinson v. Shearer, 211 Ala. 16, 99 So. 179; Sellers v. Hayes, 17 Ala. 749; 1 A. L. R. page 1330 note; Code § 8034, subdiv. 5.

The parties (seller and purchaser) did not regard time as the essence of the contact. However, in a case where time is the essence of the contract, and the buyer treats the contract in force after the expiration thereof, he cannot subsequently decline to receive performance within a reasonable time. Lowy v. Rosengrant, 196 Ala. 337, 342, 71 So. 439, and authorities; Phillips v. Sipsey Coal Min. Co., 218 Ala. 296, 118 So. 513; Zirkle v. Ball, 171 Ala. 568, 571, 54 So. 1000; Stewart v. Cross, 66 Ala. 22; Davis v. Robert, 89 Ala. 402, 8 So. 114, 18 Am. St. Rep. 126; Hurst v. Thompson, 73 Ala. 158; Acker v. Bender, 33 Ala. 230; Andrews, Allen & Moorefield v. Tucker, 127 Ala. 602, 29 So. 34. That is the saying, that one may not claim benefits of a contract (as Stapleton, the instant purchaser did in dealing with the railroad company and him who erected the turpentine still, etc.) and thereafter assert his disaffirmance. Dominey v. Johnson-Brown Co., 219 Ala. 666, 123 So. 52; Phillips v. Sipsey Coal Min. Co., 218 Ala. 296, 118 So. 513; Lysle Milling Co. v. North Alabama Groc. Co., 201 Ala. 222, 77 So. 748.

This court has further held, in a proper case, that rescission cannot be supported until the party complaining of the delay or failure calls upon the other party to perform, and a reasonable time is given therefor, after notice that the matter is desired to be closed according to the same contract. J. M. Ackley & Co. v. Hunter-Benn & Co.'s Co., 166 Ala. 295, 309, 51 So. 964; Elliott v. Howison, 146 Ala. 570, 40 So. 1018; McFadden v. Henderson, 128 Ala. 221, 29 So. 640; Americanized Finance Corp. v. Yarbrough, 223 Ala. 266, 135 So. 448, 451.

This is sufficient to indicate that where this purchaser had taken possession of the property under a contract, used it as his own after the expiration of "thirty days," and long thereafter, and made no demand for delivery of the deed, he will not be permitted to rescind the contract when the deed is tendered on the trial. In this ruling there was error of law on the part of the special master—in holding that the purchaser could so rescind, and in disallowing the set-off of the purchase price as against said mortgagee-purchaser's interest in the mortgage. And for like reason there was error in the final decree in not passing upon such error of law and in the disallowance of the $3,000 credit as against Stapleton's interest in the mortgage, no superior eq

uity being shown on that interest in favor of his comortgagee.

It follows from the foregoing that there was error in the allowance of the sum indicated as reasonable solicitor's fee. The mortgage provides as to this: "In event of default in the payment at maturity of said mortgage debt, or any amount secured thereby. mortgagees are hereby authorized to sell said property, at auction, for cash after give [giving] notice by advertisement, once a week for three consecutive weeks in any newspaper then published in Baldwin County, Alabama, and to make proper conveyance to purchaser, and the proceeds of sale to apply first, to the payment of the costs of said sale, including a reasonable attorney's fee." The matter has been frequently considered by this court. Anniston Banking & Loan Co. v. Lapsley, 200 Ala. 377, 76 So. 293; Cooper v. Parker, 176 Ala. 122, 57 So. 472; Kelly v. Carmichael, 221 Ala. 371, 373, 129 So. 81. And the required pleading and proof was adverted to in Dudley et al. v. Colonial Lumber Co. (Ala. Sup.) 137 So. 429.[1] It may be said such allowance as per contract was in contemplation of the parties and was to indemnify the mortgagees .or payees against such reasonable expense incurred or contracted in the collection or foreclosure as provided in the contract.

This will be sufficient to guide upon another trial where there is the foregoing application of set-off or payment upon the purchaser's part of the mortgage debt.

The decree of the trial court is reversed, and the cause is remanded for further decree pursuant to the foregoing.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and BROWN, JJ., concur.