(80 South. 818)

BLACKBURN v. McLAUGHLIN et al.

(2 Div. 675.)

(Supreme Court of Alabama. Dec. 19, 1918. Rehearing Denied Feb. 13, 1919.)

1. SPECIFIC PERFORMANCE ⊚⇒114(4) — OFFERS—ACCEPTANCE.

Though the letter which complainant wrote to the owners of property was a counter proposition rather than an unqualified exercise of his option to purchase, yet where complainant, in his bill for specific performance, averred his readiness, willingness, and ability to perform, that is all that is necessary to invoke the jurisdiction of a court of equity.

2. SPECIFIC PERFORMANCE ⊚⇒57—OPTIONS—UNILATERAL CONTRACTS.

Though a contract giving complainant an option to purchase land was unilateral in the beginning, yet, where he filed a bill for specific performance, mutuality was created and specific performance may be decreed; the court of equity having power to compel plaintiff to execute notes and mortgage as provided by the contract.

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. SPECIFIC PERFORMANCE ☞8 — DISCRETION OF COURT.**

The discretion which the court of equity should exercise in a suit for specific performance is a judicial, and not a personal, discretion.

**4. SPECIFIC PERFORMANCE ☞16 — CONTRACTS—CHANGE IN CONDITION.**

Where a contract giving complainant an option to purchase land was reasonable and fair at the time of execution, and any change in circumstances was not brought about by complainant, a court of equity will not in considering a bill for specific performance look to the changed circumstances.

Appeal from Circuit Court, Perry County; B. M. Miller, Judge.

Bill by James T. Blackburn against Rowena McLaughlin and others. From a decree sustaining a demurrer to the bill, complainant appeals. Reversed and remanded.

A. W. Stewart, of Marion, and R. B. Evins, of Greensboro, for appellant.

Nathan L. Miller and Needham A. Graham, Jr., both of Birmingham, and William L. Hogue, of Marion, for appellees.

SAYRE, J. Blackburn, who was complainant in the court below, takes this appeal from the decree by which the court sustained defendants' demurrer to his amended bill of complaint. In 1907 the parties had entered into an agreement in writing by which defendants leased to complainant a tract of land in Perry county. The fifth clause of the contract stipulated as follows:

"5. The party of the second part [complainant] shall have the right at any time during said term to purchase said land at the price of eight thousand dollars ($8,000.00) and in event of such purchase, the parties of the first part, or such of them as are necessary to convey title to said land, will execute and deliver to him a good and sufficient deed to said land, describing the same fully by land numbers and boundaries as may be necessary upon the execution and delivery by said party of the second part of his note for said sum of $8,000, payable to the owners of said land, ten (10) years after date and secured by good and sufficient mortgage on said land and said debt drawing interest from date, payable annually. Said mortgage to contain a clause giving said party of the second part the privilege of paying all of said amount on any interest day and interest on the balance to cease from such payment."

May 3, 1916, complainant mailed from Marion the following letter:

"Mrs. Rowena McLaughlin, Miss Alma McLaughlin, Mrs. Emma Boyles, Aliceville, Ala., and Birmingham, Ala.—My Dear Ladies: On the 30th day of September, 1907, I made a contract with you and in clause five of said contract it is written, that 'party of the second part shall have the right at any time during said term to purchase said land at the price of eight thousand dollars ($8,000) and in event of such purchase, the parties of the first part, or such of them as are necessary to convey title to said land, will execute and deliver to him a good and sufficient deed to said land, describing the same fully by land numbers and boundaries as may be necessary upon the execution and delivery by said party of the second part of his note for said sum of $8,000.00 payable to the owners of said land, ten (10) years after date and secured by a good and sufficient mortgage on said land and said debt drawing interest from date, payable annually. Said mortgage to contain a clause giving said party of the second part the privilege of paying all of said amount on any interest day and interest on the balance to cease from such payment.'

"I am now ready to buy said land under the terms of said contract, and request that you mail to the Marion Central Bank or either the People's Bank of Marion, Alabama, a good and sufficient deed to me for said land under the terms of said contract, and when the deed is shown to be good and sufficient by my attorneys, I will execute and deliver to you my note for the eight thousand dollars, secured by a mortgage on said lands under the terms of said contract.

"Trusting that you will attend to this matter at once, I am,

"Most respectfully yours, J. T. Blackburn."

Receiving no reply, complainant, still within ten years of the date of the contract, filed this bill for a specific performance, averring in third paragraph:

"Complainant avers that he was, on the 3d day of May, 1916 [the date of his letter, supra], and has been ever since that date, and is now, ready, able, and willing to execute this note to the owners of said land in the sum of $8,000, payable ten years after date and secured by mortgage on said lands as provided for in said contract, and to do whatsoever is required of him, to receive from them the deed to said property contracted to be executed and delivered to him."

The prayer of the bill is for a decree requiring that—

"The said defendants shall, upon the execution and delivery to them by the said complainant of the note and mortgage provided for in paragraph 5 of the contract, * * * execute and deliver to the said complainant the deed provided for in said paragraph,"—etc.

[1] Defendants (appellees) contend that there has never been any acceptance of the offer contained in the option, and therefore that there is no contract to be enforced. It may be conceded that the letter which complainant wrote to the owners of the property, parties also to the contract, was a counter proposition rather than an unqualified exercise of his option according to its precise terms; but that does not necessarily deny the equity of the bill, for the right to specific performance in a court of equity grows out of the contract, not out of a breach of it by

defendant, and when complainant avers his readiness, willingness, and ability to perform, he avers all that is necessary to invoke the jurisdiction of the court. Jones v. Sommerville, 1 Port. 437; Broughton v. Mitchell, 64 Ala. 210; Long v. Addix, 184 Ala. 236, 63 South. 982.

[2] It is urged in support of the decree that the contract which complainant sought to enforce was unilateral, and, in any event, that the language of the contract, viz., "upon the execution and delivery by said party of the second part [complainant] of his note * * * secured by good and sufficient mortgage on said land," made the tender of note and mortgage a condition precedent to complainant's right to a conveyance, and that complainant's bill was fatally defective for that he failed therewith to make the necessary tender. In respect to the first branch of this contention, it may be said generally that, although there may be a lack of mutuality in the beginning, this may be cured by the unbound party subsequently binding himself also by promise or act. 9 Cyc. 333; Sheffield Furnace Co. v. Hall Coal & Coke Co., 101 Ala. 446, 14 South. 672. As covering the contention in both aspects, we prefer to quote the language of Chief Justice Beasley in Richards v. Green, 23 N. J. Eq. 536:

"It is true that there are exceptions to the rule that a court of equity will not perform unilateral contracts, as, for instance, in those cases where an agreement, which the statute of frauds requires to be in writing, has been signed by one of the parties only" (such a case we considered in Wood v. Lett, 195 Ala. 601, 71 South. 177) "or when the contract, by its terms, gives to one party a right to the performance which it does not confer upon the other, an example of which is exhibited in * * * a lease for years which gives an option to the lessee to purchase during the term"—just the case here. "But it will be observed that, when such contracts come to be enforced in equity, they cease to be unilateral, for, upon filing the bill, the party who was before unbound puts himself under all the obligations of the contract. By his own act he makes the contract mutual, and the other party is enabled to enforce it. The consequence is, that in every case that I can find, where specific performance has been ordered, a mutual remedy existed upon it at the time of the rendering of the decree. It seems to me that the rule is universal to this extent that equity will not direct the performance of the terms of an agreement by the one party, when, at the time of such order, the other party is at liberty to reject the obligations of such agreement."

This is in line with the decisions of this court in recent cases. Ashurst v. Peck, 101 Ala. 499, 14 South. 541; Zirkle v. Ball, 171 Ala. 568, 54 South. 1000; Eason v. Roe, 185 Ala. 71, 64 South. 55. Now that complainant has filed his bill, there can be no question about mutuality of obligation between the parties; the argument indicates an apprehension on the part of defendants that the court will have no power to compel complainant to execute his note and mortgage, and so that, in the absence of a tender by lodging properly executed note and mortgage with the register of the court at the filing of the bill, complainant will be allowed without responsibility to ponder the relative advantages of performance or nonperformance pending a decree—in short, that there is no mutuality of remedy. But the junior Pomeroy, in his article on Specific Performance, agreeably with the authorities to which we have already referred, says that mutuality of remedy need not have existed prior to the time of the decree. 36 Cyc. 623. The reason of this rule is made very clearly to appear in Brown v. Munger, 42 Minn. 482, 44 N. W. 519, where the court says:

"True it is that a mutuality of obligation must exist when the contract is concluded. If it lack this element ab initio, no subsequent act of the party who seeks to enforce it can obviate the objection, and render the contract capable of specific performance."

We note, parenthetically, that in case of options the fact that until the option is exercised by the optioner there is no mutuality of obligation—nothing which the vendee is bound to do—is no obstacle in the way of specific performance after the option has been exercised. Ross v. Parks, 93 Ala. 153, 8 South. 368, 11 L. R. A. 148, 30 Am. St. Rep. 47; Davis v. Robert, 89 Ala. 402, 8 South. 114, 18 Am. St. Rep. 126; Bethea v. McCullough, 195 Ala. 480, 70 South. 680.

"But," to resume the quotation from the Supreme Court of Minnesota, "it is not indispensable that at the conclusion of the agreement there shall be a mutuality of remedy, although it has been so asserted in some of the text-books and distinctly affirmed in adjudicated cases. It is, however, impossible to determine from the text-books, or by an examination of the cases referred to, upon what equitable principle the proposition rests, or has been placed by those who have announced it. When, from the nature of the contract, it is not in the power of the court to compel a full and complete specific execution by both parties at the time coercion is demanded by one, the reason is obvious why specific performance should not be exacted on one side, and the contract left wholly or partly unperformed on the other. Cases frequently cited in support of the statement that there must be mutuality of remedy as well as of obligation, ab initio, are simply authority for the easily understood proposition, before stated, that mutual enforcement of the contract must be practicable when specific performance is to be decreed. The court should then be able to enforce all of the terms of the contract at once, in præsenti; should have the power to superintend the performance of the conditions of the contract by each of the parties, and in all its parts."

So, we think, the court was sustained by reason and authority when it said, in a case

involving the principle now at issue (Zirkle v. Ball, supra), that the chancery court had the power to require the complainant to do equity as a condition precedent to relief, and to protect the defendants as to costs, in case they did not resist performance. Considering the contract in this case, it is evident that the court, as a condition to relief, may require complainant to do everything he agreed to do in his contract.

Defendants cite some cases which they suppose to be at variance with the authorities to which we have referred. Some of them may be discriminated from the case at bar on substantial grounds. Of Harper v. Johnson, 129 Ala. 296, 30 South. 283, and the older cases upon which it was placed, it seems enough to say that, so far as they may seem to have application to a case like that now before the court, they have been answered by the decision in Brady v. Green, 159 Ala. 482, 48 South. 807. The "moreover clause" of Mitchell v. Wright, 155 Ala. 458, 46 South. 473, seems to have been thrown in without consideration of the authorities on the principle involved. Smith v. Sherman, 174 Ala. 531, 56 South. 956, was an action in which the court seems to have made a difference between the cases in which the vendor sues for the breach of a contract for the sale of land, and those in which the vendee sues. Upon the whole, we are satisfied with the conclusion which follows from the more modern authorities to which we have referred.

[3, 4] In the last place it is said for defendants, appellees, that the contract complainant seeks to have enforced is hard and unconscionable, and that the court, in the exercise of its discretionary jurisdiction, should not decree its performance. The contract in question is to be considered as of the date of its execution. If the contract at the time of its execution was reasonable and fair—and, in general, parties should be left to their own judgment of the benefits to be derived from their contracts (S. & N. Ala. R. R. Co. v. Highland Avenue & Belt R. R. Co., 98 Ala. 400, 13 South. 682, 39 Am. St. Rep. 74)—the court, in the exercise of its discretion, which is judicial and not personal, will not look to changed circumstances unless they have been brought about by the party seeking enforcement (Homan v. Stewart, 103 Ala. 644, 16 South. 35). The bill in this case carries no averment of facts which would warrant an inference that the contract in question was at the time the parties entered into it unfair, hard, or unconscionable; nor does it appear that there is any reason of judicial cognizance why it should not now be enforced.

After due consideration, we feel constrained to hold that the circuit court erred in sustaining the demurrer to complainant's amended bill.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.